We move to the fourth case this morning, Taylor v. Village of Dalton.  Morning, your honors. May it please the court, counsel. My name is Josh Friedman and I represent the plaintiff appellant, Gordie Taylor, who appeals the district court's grant of summary judgment for the defendants in this case. Your honors, in the words of Ortiz v. Werner Enterprises, Chief Terry Hughes, the individual who fired Mr. Taylor, did not much like black people, and he forced Mr. Taylor out the door because of his race. There is ample evidence from which a reasonable fact finder could conclude that Mr. Taylor's race caused his discharge. This evidence includes the repeated, and in many cases admitted, use of vile racial slurs, not only by Mr. Hughes, but also by Taylor's two lieutenants, defendants Manning and Duvall, who were intimately involved in the decision to discharge Taylor. You're also threatened by these same defendants. I'd like to zero in, if I might, on page five of the red brief, because there, the Village quotes McCulloch as saying that he had initiated an investigation because Taylor failed to properly obey a legal order to immediately submit to an alcohol breathalyzer, hand splash, or blood test. Now, of course, Taylor did immediately submit to a breathalyzer test, and he passed. What should we make of this? It seems to be evidence from which a jury could infer that the charge of insubordination was trumped up. Did you argue that this was evidence that Taylor was never insubordinate, or did you concede that McCulloch genuinely thought he was insubordinate? Your Honor, you were cut off. I'm not sure your question is whether we argued below whether Taylor was not insubordinate or whether, I'm sorry. Or whether McCulloch genuinely believed he was insubordinate. Well, the argument, Your Honor, below was that Mr. Taylor was not insubordinate based on not only the fact that he volunteered to take the test immediately, as acknowledged by Defendant Manning, that the order did not indicate that it had to be a blood test. The collective bargaining agreement did not order that it would be a blood test. That Mr. Duval, who we call the chief persecutor in this case, advised Hughes that Mr. Taylor was insubordinate, but Mr. Duval wasn't even on duty on the day in question. That Mr. Hughes had made up his mind essentially, prior to even becoming chief, that Gordy was guilty and he used the words scuttlebutt and rumor to support what he thought was an investigation. Hughes also didn't speak, didn't bother to speak to Manning or McCulloch, the two best people in a position to know what happened that day. Also that Hughes knew that Taylor had a pending complaint about race discrimination documented in McCulloch's notes. Against Duval, the individual accused him of insubordination and he didn't bother to investigate. McCulloch admitted in his deposition that he did not recommend that Taylor be discharged. Hughes admitted no one from the village was calling for his discharge. And Hughes also admitted that he didn't have to fire him. It was solely his choice. So, Your Honor, we argue that based on that, there was no insubordination here and I think equally that Hughes did not honestly believe that he was insubordinate. I'm sorry, does that address your question?  Okay, thank you, Your Honor. So, Your Honor, when these facts are viewed in the light most favorable to Mr. Taylor, the conclusion is inescapable. Hughes did not like black people. He vowed that blacks would be gone from his department and he made good on that threat by firing Taylor. The district court, however, ignored this inescapable conclusion because it relied on the indirect direct evidentiary framework that was rejected by this court in Ortiz. The district court wrote that, quote, without some evidentiary factual link connecting Hughes' bigotry to his decision, a jury could not conclude that the termination was illegally motivated. And, quote, Hughes' racist comments were not made around the time of the termination decision or in reference to it. Citing Agon Muwan versus Cook County Sheriff's Department 602F3, 485. In fact, this very, the second passage I just cited from Agon Muwan. Relying upon the district court, cites in turn to Hemsworth versus Quotesmith 476F3, 487, which case was expressly overruled by Ortiz. In other words, the district court, although sub silentio, the district court required a direct evidentiary link between Hughes' racial animus, admitted racial animus, and the discharge. In other words, they required, in the words of Ortiz, the fabled employer who admits to firing an employee because of his race. This is the identical error that the district court made in Ortiz. In Ortiz, the district court noted that despite the fact that there was ample record evidence of racial slurs by the decision maker, because those slurs did not have anything to do with plaintiff's discharge, plaintiff could not make out a direct evidence case. And Ortiz says, no, wait a minute here. You don't take this evidence here, wall it off, and this evidence here, and wall it off, and you don't have a case. The court in Ortiz, although it didn't really announce a new standard, it reached back several, 20 years or so to go to the conclusion that you take all the evidence together. You take the animus evidence, you take the questions surrounding the discharge, you put it in one pile, and you view it as a whole. Evidence is evidence, and all evidence must be placed in a single pile and evaluated as a whole, and that is done here. We have evidence. One, an individual, three individuals, the three prime movers of this decision, made racist statements, much of which was admitted. Second, Hughes and Manning, excuse me, Hughes and Duvall said, you all don't belong here, referring to black people, and you will be gone. He made good on that threat. The fact that there was not a direct evidentiary link, the fact that Duvall and Hughes were clever enough not to state, yes, I'm firing you because of your race, does not change the fact that a reasonable jury could look at all this evidence and make a very reasonable inference that Hughes did not like black people, and that's why he fired Mr. Taylor. On the issue of harassment, Your Honor, Mr. Taylor also has a racial harassment claim, and the district court acknowledged that there was ample evidence of racial hostility that would have been sufficient to avoid summary judgment. The only issue the district court raised in dismissing that claim was that there were no overt acts of racial hostility within the 300-day limitations period, and thus his claim was untimely. I think, Your Honor, the district court is making the same analytical error that it made in dismissing the termination case because it walled off the evidence. The case law, as I've cited on the harassment case, says no, even if there's no overt evidence of discrimination within the limitations period, you look at the entire period. You can go beyond the 300-day period. You look at the entire context. You look at the gestalt, I guess you could say, and if you can find that the non-overt acts of racism are part and parcel of the overt acts, even if there is no overt acts within the 300-day period, there could still be a finding of racial harassment. But doesn't that eliminate the 300-day requirement? No, Your Honor. I believe it's the Shanoff case and that was followed up by the Morgan case that says as long as there's an act within the 300-day period, you still have to show that it's linked to some pattern of conduct, which I believe we've made here, that there's sufficient evidence to find a case of harassment and that it's timely. I see I'm into my rebuttal time, so I'll ask that the court reverse the district court's decision. Thank you. Thank you, counsel. Mr. Murphy? At least the court, counsel made two serious misstatements in response to Judge Rovner's inquiry. First, the collective bargaining agreement requires a blood or alcohol test because the contract requires that the test be subject to confirmation, and one cannot confirm a breathalyzer test. So the contract does require blood or alcohol. Secondly, McCulloch, the former chief who ordered Mr. Taylor to take the examination, is African American. Third, Mr. Taylor specifically admitted that he made a serious error with respect to the insubordination. Document 83 is plaintiff's response to our summary judgment statement of facts. Paragraph 36, I inquired of Mr. Taylor. Okay. Did you consider yourself at risk for discipline in this matter? Yes. You intentionally refused to take the blood draw, right? Yes. And you know that refusing a direct order from the fire chief is a serious matter, isn't it? Answer, yes. Terry Hughes. But my understanding, Mr. Murphy, is that you can take the blood draw.